IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AIG PROPERTY CASUALTY CO., | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-18-1853 |
| EATON CORP., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This is a subrogation matter arising from a residential fire. Plaintiff AIG Property Casualty Company insured the residence and, pursuant to the terms of its insurance policy, paid the estate of the insured homeowners over $19 million for real and personal property damage. Following investigations into the fire, AIG sued Defendant Eaton Corporation in Anne Arundel County Circuit Court. Eaton removed the case to this Court. At present, AIG moves for leave to amend the complaint, and Eaton opposes the amendment. The motions have been fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Court will deny AIG's motion for leave to amend the complaint.

### I. *Background*[1]

The fire occurred in the early hours of January 19, 2015. (Am. Compl. ¶ 10, ECF No. 25-1.) It spread rapidly, destroying the house and, tragically, killing its six occupants—the two

---

[1] The Court takes the factual allegations of the complaint and proposed amended complaint as true. *See, e.g., Perkins v. United States*, 55 F.3d 910, 916 (4th Cir. 1995) (affirming district court's denial of motion for leave to amend because the proposed allegations—even if taken as true—would not survive a motion to dismiss).

1

homeowners and four of their grandchildren. (*Id.*) This case is limited to payments for the property damage.

A combined federal and local investigation found that the fire started near a Christmas tree.[2] (*Id.* ¶ 11.) Approximately twenty private entities, including AIG, continued investigating the fire. (AIG Status Report, ECF No. 18.) The private investigation included two additional weeks of excavation at the end of which AIG asserted that the cause of the fire was a specific, defective product. (*Id.*) On January 10, 2018, AIG sued Eaton for strict liability, alleging that "the fire started at a relocatable power tap ('RPT') which was used to power the lights of the Christmas tree." (Compl. ¶ 11, ECF No. 1-2.) In that initial complaint, AIG alleged that Eaton manufactured and sold the RPT. (*Id.* ¶ 12.) Because Eaton contended that it neither manufactured nor sold the RPT, (*see* AIG Status Report), this Court granted the parties' consent motion to engage in a period of limited discovery to resolve the "product identification issue." (Consent Mot., ECF No. 19; Order, ECF No. 20.)

As a result of AIG's discovery findings, AIG seeks to change the product that is the basis of the strict liability claim. AIG now alleges that "the fire started at a plug for what [AIG] originally believed was a relocatable power tap" but what investigation revealed was "a polarized super plug ('PSP') model 2600." (Am. Compl. ¶ 11–12.) The "plug," newly referenced in the proposed amended complaint, is a small metal plug blade bearing an "Eagle" logo. (Mot. to Amend Mem. at 2, ECF No. 25-3.) AIG alleges that the PSP was manufactured and sold by Eaton's predecessor, Eagle Electric Manufacturing. (Am. Compl. ¶ 13.) In essence, AIG replaces RPT with PSP throughout the proposed amended complaint.

---

[2] In its opposition to AIG's motion for leave to amend, Eaton attaches the investigators' executive summary, which lists several possible causes of the fire. (Exec. Summary at 36–37, 43, ECF No. 26-1.) Because Eaton raises futility, the Court must look only to the sufficiency of the amended complaint and cannot consider such evidence.

2

For clarity, the Court will refer to the RPT as the power strip and the PSP as the super plug. Therefore, the initial complaint involved the power strip claim and the proposed amended complaint would involve the super plug claim.

*II.    Analysis*

AIG moves for leave to amend. In its motion, AIG explains that, at the time it filed suit, it believed the plug blade was part of the power strip. After the limited discovery period, Eaton's responses convinced AIG that the plug blade did not belong to the power strip but, rather, to the super plug. According to AIG, it seeks to amend to "properly identify the product at issue." (Mot. to Amend Mem. at 3.) AIG's explanation, however, does nothing to clarify how the plug blade caused the fire and, thus, is the "product at issue."

Pursuant to Federal Rule of Civil Procedure 15(a)(2), the Court should "freely give" a party leave to amend its pleadings "when justice so requires." *See Jones v. Ceres Terminal, Inc.*, Civ. No. JKB-14-1889, 2014 WL 5088281, at *2 (D. Md. Oct. 8, 2014) ("Whether to permit the Plaintiff to file an amended complaint is a question that falls within the Court's discretion . . . ."). "This directive gives effect to the federal policy in favor of resolving cases on the merits instead of disposing of them on technicalities." *Mayfield v. Nat'l Ass'n for Stock Car Auto. Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012). Consequently, "leave to amend a complaint should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 446 (4th Cir. 2001). Eaton raises futility.

A court may deny leave to amend as futile if the proposed amended complaint would not survive a motion to dismiss for failure to state a claim. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008); *see Ross v. Cecil Cty. Dep't of Soc. Servs.*,

3

Civ. No. WDQ-11-181, 2012 WL 346625, at *2 (D. Md. Jan. 31, 2012) (analyzing futility under Rule 12(b)). But, leave to amend should only be denied as futile when the proposed amended complaint is clearly insufficient on its face. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). Eaton argues that amending would be futile because AIG's super plug claim is (1) implausible and (2) barred by the statute of limitation. Eaton prevails on either ground.

### A. *Failure to State a Claim*

The Court turns first to plausibility.[3] "The standard for futility [for failure to state a claim] is the same as for a motion to dismiss under Rule 12(b)(6)." *Brightwell v. Hershberger*, Civ. No. DKC-11-3278, 2015 WL 5315757, at *4–5 (D. Md. Sept. 10, 2015). These parallel standards require a complaint—or a proposed amended complaint—to contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court will accept all of AIG's factual allegations as true, but this principle does not apply to legal conclusions. *Twombly*, 550 U.S. at 555.[4]

Under Maryland law, the elements of strict liability are:

> (1) the plaintiff was the user or consumer of an alleged defective product; (2) the defendant was the seller of the product and at the time of sale was engaged in the business of selling such a product; (3) at the time of sale the product was defective; (4) the product reached the plaintiff without substantial change in the condition in which it was sold; (5) the defect made the product unreasonably

---

[3] Eaton did not move to dismiss the original complaint, so this Court never analyzed the sufficiency of the original allegations.

[4] Eaton asks the Court to stray from a typical Rule 12(b)(6) analysis and "to undertake a 'context-specific inquiry' based on judicial experience and common sense to look for a 'plausible' claim for relief." (Opp. Mot. at 26–27, ECF No. 26.) The "context" here is "two inherently inconsistent pleadings from AIG attempting to set forth irreconcilable allegations as to the basis for Eaton's liability." (*Id.* at 27.) In many cases, plaintiffs will amend their complaints with inconsistent theories because they discover the second theory to be supported by the evidence. *See Ward Elec. Servs., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987) (holding change in theory of recovery does not suffice to justify denial of leave to amend). Consequently, an amended complaint, which alleges a new theory inconsistent with the old theory, is not necessarily futile. This Court will not stray from the proper Rule 12(b)(6) analysis to determine whether AIG's proposed amended complaint states a plausible claim.

4

dangerous to the plaintiff; and (6) the defect proximately caused plaintiff's injuries.

*Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 407 (D. Md. 2001) (citing *Phipps v. General Motors Corp.*, 363 A.2d 955, 958 (Md. 1976)). A product may be defective because of its design, a manufacturing error, or the manufacturer's failure to warn of certain risks. *Simpson v. Standard Container Co.*, 527 A.2d 1337, 1339–40 (Md. Ct. Spec. App. 1987).

In attempting to allege strict liability, AIG makes a series of conclusory statements. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). AIG alleges that Eagle, Eaton's predecessor, created the super plug in an "unreasonably dangerous and defective condition," (Am. Compl. ¶ 19); the super plug was "expected to and did reach its intended users, including the [insured homeowners], without substantial change in the condition in which it was designed, manufactured, assembled, distributed, sold, and/or supplied," (*id.* ¶ 21); the insured homeowners used the super plug in its intended way and did not misuse or materially alter it such that, at the time of the fire, it was in substantially the same condition as it was when purchased, (*id.* ¶ 22–23); the investigation concluded that the fire started at the plug blade attached to the super plug, (*id.* ¶ 11–12); and, the super plug's defect directly and proximately caused the fire, (*id.* ¶ 24). Quite clearly, these statements are devoid of facts specific to the product and property damage at issue.

For purposes of this analysis, the Court focuses on two elements of strict liability: defect and causation. First, AIG alleges that the super plug was defective but fails to allege how. *See Williams v. Smith & Nephew, Inc.*, 123 F. Supp. 3d 733, 747 (D. Md. 2015) (holding no plausible claim where plaintiffs make a "blanket statement" that defendant deviated from the approved design but "do not indicate what that design is, nor . . . point to any specific facts tending to show such deviation"). Indeed, it is not clear whether AIG is alleging a design, manufacturing, or

failure-to-warn defect. Second, AIG alleges that the super plug's defect caused the fire but, despite the length and complexity of the fire investigation, provides no details as to how the alleged defect started the fire. *See* Richard B. Allyn & Margo S. Brownell, *Getting Something Back: Subrogating After the Catastrophe*, 32 Brief 44, 51 (2005) ("[I]n numerous instances, subrogation may be blocked by . . . the simple difficulty of proving the cause and origin of the fire."). By failing to allege specific facts in support of the elements of strict liability, AIG fails to state a claim for relief that is plausible on its face.

It does not take much to survive a motion to dismiss. *See, e.g., Fitzgerald v. Mannington Carpets, Inc.*, Civ. No. HAR 93-4218, 1994 WL 395743, at *2 (D. Md. July 12, 1994) (holding plausible strict liability claim where plaintiff summarily alleged delivery "without substantial change in condition" and specifically alleged new carpet was purchased from and installed by defendant store). But, merely repeating the elements of a cause of action cannot be enough. Because AIG fails to sufficiently allege strict liability, granting leave to amend would be futile.

### B. *Statute of Limitation*

Even if the proposed amended complaint sufficiently alleged strict liability, that claim would be barred by the statute of limitation because it does not relate back to the initial claim. To dismiss a complaint—or a proposed amended complaint—under Rule 12(b)(6) as untimely, the face of the complaint must contain "facts sufficiently clear to conclude that the statute of limitations had run." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007). Because the parties do not dispute that the statute of limitation ran three years after the fire, on January 19, 2018, *see* Md. Code Ann., Cts. & Jud. Proc., § 5-101, and that AIG filed suit by that date, *see Anne Arundel Cty. v. McCormick*, 594 A.2d 1138, 1140–41 (Md. 1991) (holding subrogee is bound by

same statute of limitation period as subrogor), the question is whether the super plug claim relates back to the initial power strip claim and so comes within the statute of limitation period too.

An amended complaint relates back to the date of the original complaint when "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). A claim arises out of the same conduct, transaction, or occurrence if: (1) there is "a factual nexus between the amendment and the original complaint"; and, (2) defendant "had notice of the claim and will not be prejudiced by the amendment." *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983). In other words, "a common core of operative facts must exist that unites the original and newly asserted claims and that common core exists if the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds." 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1497 n.30 (3d ed. 2018).

Eaton cites several cases to support its assertion that no factual nexus existed here. *See Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) (no factual nexus because new claim for absence of informed consent required plaintiff to prove entirely different set of facts than negligence claim arising from the same surgery); *Brightwell v. Hershberger*, Civ. No. DKC-11-3278, 2016 WL 4537766, at *5 (D. Md. Aug. 31, 2016) (no factual nexus because the two allegations of assault occurred two years apart and were perpetrated by different officers); *Jones v. Bernanke*, 557 F.3d 670, 675 (D.C. Cir. 2009) (no factual basis where original complaint alleged retaliatory demotion and amended complaint added a discriminatory failure to promote thirty-two months before the alleged retaliation); *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1125 (9th Cir. 2006) (no relation back where plaintiff added defamation claim with identical statement because such claims "are based on the acts of disclosure themselves, each of which is distinct in

time and place, if not substance"); *Flum v. Dep't of Educ. of New York*, 83 F. Supp. 3d 494, 498 (S.D.N.Y. 2015) (no factual nexus where original complaint contained no allegations of discrimination by the new defendant and, in fact, seemed to indicate new defendant did not discriminate against plaintiff at the time and location newly alleged); *Holdridge v. Heyer-Schulte Corp. of Santa Barbara*, 440 F. Supp. 1088, 1094 (N.D.N.Y. 1977) (no factual nexus where initial complaint contained allegations relating to one prosthetic device but did not contain allegations of other prosthetic devices that were added in the proposed amended complaint). Each of these cases involve a new count or defendant. In such cases, the Supreme Court has held that a new claim does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). AIG does not seek to add a count or defendant; AIG seeks to change a fact.

In terms of changing factual allegations, "[a]n amended complaint will not relate back . . . if it states an entirely new cause of action based on facts different from the facts alleged in the original complaint." *Hooper v. Sachs*, 618 F. Supp. 963, 977 (D. Md. 1985). A plaintiff may revise its legal theory, change the statutory basis of its claim, or even add counts, but only if "the factual situation upon which the action depends remains the same." 6A Wright & Miller, *supra*, § 1497. The single fact AIG seeks to change is the product that caused the fire. AIG points out that, besides this fact, the original complaint and proposed amended complaint "involve the same fire, the same damage, and the same insurance claim." (Reply at 3, ECF No. 27.) True, but AIG fails to acknowledge the importance of the factual allegation it does seek to change.

The product is the core of a strict liability claim. *See Phipps*, 363 A.2d at 958 ("The relevant inquiry in a strict liability action focuses not on the conduct of the manufacturer but rather on the product itself."). Therefore, in the strict liability context, two claims that assert that different

products caused a fire do not contain overlapping allegations nor "a common core of operative facts." The product is the operative fact. AIG asserts that the Court ordered limited discovery to resolve this precise "identification" issue, (Mot. to Amend Mem. at 3), but this characterization does not capture the true point of the discovery. AIG requested limited discovery to confirm the power strip's manufacturer; it did not ask for discovery to determine which product caused the fire. Such a request would have conflicted with AIG's assertion that it knew the cause of the fire.

The purpose of the relation-back rule is to soften the blow of the statute of limitation. 6A Wright & Miller, *supra*, § 1497. The rule allows a plaintiff to revise its complaint but only to a degree that does not prejudice the defendant or deprive it of notice. *Id.* Accordingly, any amendments must arise out of conduct set forth in the original complaint. *See id.*; *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (concluding relation back occurs when amendment "renders prior allegations more definite and precise" and not when it creates an "entirely distinct set" of facts). A plaintiff may not change the factual basis of the complaint and, for all intents and purposes, bypass the statute of limitation. *See Bd. of Regents v. Tomanio*, 446 U.S. 478, 487 (1980) ("[Statutes of limitation] have long been respected as fundamental to a well-ordered judicial system."); *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49 (1944) ("Statutes of limitation . . . in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."). The importance of statutes of limitation are such that "[a] plaintiff may not baldly allege a broad course of conduct over a lengthy period of time and later sue on any act that occurred during that time period." *English Boiler & Tube, Inc. v. W.C. Rouse & Son., Inc.*, 172 F.3d 862, 1999 WL 89125, at *3 (4th Cir. 1999). In

the same vein, a subrogee may not allege that one product caused a fire and use that product as a placeholder for any other product that emerges during discovery.

Subrogation is a matter of course in the insurance world. An insurance company that pays on its policies is entitled to sue on behalf of its insured, but the entitlement is conditioned on the company's ability to prove the cause of the damage. Sometimes, the expense will fall entirely on its shoulders. Such is the fate of companies that make a livelihood on the underwriting of risk. AIG had three years to determine the cause of the fire. With the benefit of a federal investigation, AIG concluded that a power strip manufactured by Eaton was defective and caused the fire. AIG later decided that a super plug manufactured by Eaton was defective and caused the fire. The Court concludes that these claims lack a factual nexus. As such, the super plug claim does not relate back and is barred. Without reaching the question of notice and prejudice to Eaton, the Court holds that amendment would be futile.

### *III.* *Conclusion*

Amendment would be futile because the proposed amended complaint fails to state a claim for relief that is plausible on its face and, in the alternative, because the claim itself is barred by the statute of limitation. Accordingly, an Order shall enter denying AIG's motion for leave to amend the complaint.

DATED this /2 day of April, 2019.

BY THE COURT:

James K. Bredar
Chief Judge